■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN J. SCHULTZ, Appellant.—Weiss, J. Appeal from a judgment of the County Court of Chemung County (Castellino, J.), rendered April 28, 1989, convicting defendant upon his plea of guilty of the crimes of burglary in the second degree and burglary in the third degree.

On November 23, 1988 during the course of investigating recent burglaries in the City of Elmira, Chemung County, the police obtained a sworn statement by Alyson Barrett implicating defendant in a series of burglaries and larcenies. The police were informed that defendant was about to depart by bus for New York City. On the same date, defendant was arrested at the bus station and transported directly to the police station, arriving at approximately 12:30 P.M. At 12:57 P.M., defendant was read his constitutional rights. Thereafter, prior to questioning, defendant initialled each warning on a form as evidence that he understood and waived those rights. At 4:32 P.M., defendant signed a statement implicating himself in a series of crimes. Defendant was then charged in an eight-count indictment with two counts of burglary in the second degree, two counts of burglary in the third degree, two counts of larceny in the fourth degree and two counts of petit larceny. After a *Huntley* hearing, County Court denied suppression and held that defendant's confession was voluntary.

Defendant then pleaded guilty to two counts in full satisfaction of the indictment.

On appeal, defendant contends that his statement was not knowing, intelligent or voluntary and that it was signed after a prolonged interrogation where he had been subjected to mental duress and physical coercion. The voluntariness of an inculpatory statement must be viewed by looking at the totality of the circumstances *(see, People v Anderson,* 42 NY2d 35, 38). Here, the process, from start to finish took just over 3½ hours, which, by defendant's own testimony, included 45 minutes to one hour during which a detective typed defendant's statements, a 20-minute period during which the detectives reviewed the evidence in another room while defendant was left alone, and a trip to the men's room. Defendant's contentions of abuse, coercion and violations of his rights became an issue of credibility, which, in the absence of extraordinary circumstances not present here, are best resolved at the trial level *(see, People v Booker,* 141 AD2d 925; *People v Bowers,* 126 AD2d 897; *People v Jackson,* 101 AD2d 955, 956). Upon appeal, great deference is given to the finding of County Court *(see, People v Yukl,* 25 NY2d 585, 588, *cert denied* 400 US 851) where, as here, that finding is fully supported by the record.

Defendant next contends that rebuttal testimony at the suppression hearing by a priest was in violation of CPLR 4505. Initially, the burden of establishing the statutory confidentiality of a communication is upon the individual invoking the privilege. While defendant testified that he sought the priest, generically, as a Christian, he stated that his purpose was to have the priest contact an attorney on his behalf. Defendant denied making a confession and, when cross-examined he testified to his version of the five-minute visitation. Since the proof showed that defendant was not seeking religious counsel, advice, solace, absolution or ministration, but rather sought the priest for the rendering of concrete secular assistance, he clearly failed to sustain his burden of proving entitlement to the confidentiality protection of CPLR 4505 *(see, People v Drelich,* 123 AD2d 441, 443). The People demonstrated that the priest was sought in his secular role as a victim of defendant's burglary for the purpose of a personal apology. While the nature of the conversation becomes an issue of credibility, neither version shows that the communications with the priest were made in his professional capacity as a spiritual advisor *(see,* CPLR 4505; *People v Drelich, supra).*

Defendant's remaining contention is that he was denied

effective assistance of counsel. Specifically, defendant argues that his assigned counsel was ill-prepared and that he merely went through the formal motions of a defense. The record shows a spirited and reasoned defense by counsel faced with overwhelming proof of guilt, including an inculpating confession, admissions and possession by defendant of the fruits of a crime at the time of his arrest. In this factually weak position, defendant's counsel was able to negotiate a favorable plea bargain. In the totality of the circumstances of this case, the record reveals that defendant received meaningful representation meeting all constitutional standards (see, People v Baldi, 54 NY2d 137, 147; see also, People v Sullivan, 153 AD2d 223).

Judgment affirmed. Mahoney, P. J., Casey, Weiss, Levine and Harvey, JJ., concur.